**UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF
TEXAS AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **vs.** | § | **CRIMINAL NO:** |
| | § | **AU:17-CR-00227(1)-XR** |
| **(1) WILLIAM JOSEPH DUBIN** | § | |
| **(2) DAVID FOX DUBIN** | § | |

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE XAVIER RODRIGUEZ:

COMES NOW, William Dubin, Defendant, and, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, hereby moves this Court to grant a judgment of acquittal with regard to Counts 1, 9, and 10 of the Indictment. As grounds for this motion, Defendant states the following:

BACKGROUND

On January 29, 2018, William Dubin was found guilty by a jury on three counts of the indictment: Counts 1, 9, and 10. In Count 1 he was charged with conspiracy to violate the anti-kickback statute. In Counts 8 and 9 he was charged with substantive violations of the anti-kickback statute. William Dubin was acquitted of the remaining 17 counts including (1) Counts 7, 8, and 11 alleging substantive violations of the anti-kickback statute, (2) Count 12 alleging conspiracy to commit health care fraud, (3) Counts 13-19 alleging substantive health care fraud, and (3) Counts 20-25 alleging aggravated identity theft.

STATEMENT OF THE EVIDENCE

---

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND BRIEF IN SUPPORT     Page 1

The evidence produced at trial relating Counts 1, 8, and 9 is as follows:

1. Prior to January 24, 2011, Glen McKenzie and William Dubin discussed the possibility of William Dubin's psychological practice, Psychological Arts (PARTS), conducting psychological testing of children placed at an emergency shelter called William's House. On January 24, 2011, Glen McKenzie emailed William Dubin indicating a "99% probability" that he could "get [William Dubin] in" once he spoke to "the other manager and center director first." *(G105-A)*

2. Glen McKenzie was the President of the Board of Directors of Williams House in January of 2011. *(WD300)* William Dubin became aware of Glen McKenzie's position on the Board of Directors sometime before February 10, 2012. *(WD204)*

3. Between January 26, 2011 and February 15, 2011, William Dubin provided the documentation necessary to become a contractor with William's House to Sandi Lockett, the William's House Administrator. On February 15, 2011, the contract was finalized with Sandi Lockett's signature. The contract specified that children would be assigned to William Dubin and PARTS by William's House and the services would be coordinated with the "treatment team" which included "the child, managing conservator, psychiatrist, therapist, and Administrator." *(G2601)*

4. On March 3, 2011, William Dubin notified Glen McKenzie that the arrangement with Williams House was working out, and offered him "10% off the top of the first year's gross income from this project." *(G106)*

5. On April 18, 2011, William Dubin instructed Katherine King, the Operations Manager of Psychological Arts, to create the contract for Glen McKenzie, stating that it should

be the "standard HIPPA contract" and "specify his pay at $50/hr for marketing services rather than as a commission," requiring him to "meet at least monthly with us to report on marketing progress." *(G110)* On April 19, 2011, Glen McKenzie and Kathryn King signed the contract, which was dated March 1, 2011. *(WD100)*

6. Between April 19, 2011 and March 15, 2013, Glen McKenzie contacted multiple child placement agencies, emergency shelters, and other industry entities setting up meetings for PARTS and followed up on services PARTS provided. These included Lifeworks, the Texas Department of Assistive and Rehabilitative Services (DARS), Guardian Ad Litem programs, and Austin Children's Shelter. Glen McKenzie received the equivalent of 10% of the gross income related to his work.

7. On Februray 20, 2012, Glen McKenzie emailed Sandi Lockett asking "about the psychological assessments to see if they are performing up to excellence. If they are not, please also call me. You need to have the best assessments in the best time frames." *(G2605-A)*

1. On April 25, 2012, Glen McKenzie emailed Melanie Jones, the new Operations Manager of PARTS, asking her to always inform him of "which office made the referral, the name and title of the person who made the referral, their clients name, the psychologist assigned to the referral, etc. so that I can follow up." *(WD326)*

2. On June 13, 2012, Melanie Jones emailed David Dubin, telling him that Glen McKenzie was "under contract and getting paid to follow up with VocRehab and the Children's Shelters." *(WD329)*

3. On June 7, 2012, Patient D, a resident of William's House, was examined by PARTS.

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 3

The services were billed to Medicaid, and paid on June 19, 2012. Glen McKenzie was paid $1,113.59 on July 3, 2012 with check #12735.

4. On June 14, 2012, Patient C, a resident of William's House, was examined by PARTS. The services were billed to Medicaid, and paid on June 29, 2012. Glen McKenzie was paid $1,113.59 on July 3, 2012 with check #12735.


<u>LEGAL ISSUES</u>

The relevant language of the indictment for each count reads as follows:

**Count 1**: During the time frame beginning on or about March 1, 2011, and continuing through on or about March 15, 2013, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, the defendants, William Joseph Dubin, and David Fox Dubin, in violation of Title 18, United States Code, § 3 71, combined, confederated, agreed, and conspired with each other, with Glen Elwood McKenzie Jr., and with others, known and unknown to the Grand Jury, to engage in a federal health care offense, or series of federal health care offenses, as defined in Title 18, United States Code,§ 24(a)(l), against the United States in violation of 42 USC § l320a--7b (b )(2), namely the illegal payment of remuneration (kickbacks, bribes, or rebates) directly or indirectly, overtly or covertly, in cash or in kind to Glen Elwood McKenzie Jr. to induce him to refer patients to PARTS for the furnishing or arranging for the furnishing of psychological services for which payment was or would be made in whole or in part under a Federal health care program.


**Counts 9 & 10**: During the time frame beginning; on or about March 1, 2011, and continuing

through on or about March 15, 2013, in the Western District of Texas and elsewhere and within the

jurisdiction of the Court, the defendants, William Joseph Dubin, and David Fox Dubin in violation

of Title 42, United States Code,§ 1320a-7b(b)(2), knowingly and willfully offered to pay, and did

pay, Glen Elwood McKenzie Jr. remuneration, (kickbacks, bribes, or rebates) in cash or check,

directly and indirectly, overtly and covertly, to induce him to refer children and youth to

defendants WILLIAM JOSEPH DUBIN, and! or DAVID FOX DUBIN, or their agents and

employees at the business known as PARTS for the furnishing, or arranging for the furnishing of

psychological services, items and services for which payment would be made in whole or in part

under the federal health care programs known Medicaid, and the Texas VR program, including but

not limited to the following:

| Count | Individual referred to PARTS by Glen McKenzie | Date services billed by PARTS (on or about) | Approximate Medicaid payment to PARTS and payment date (on or about) | Amount of PARTS kickback payment to Glen McKenzie | Date of PARTS kickback payment to Glen McKenzie (on or about) and PARTS check number |
|---|---|---|---|---|---|
| 9 | Patient C | 06-25-12 | $570.41 06-29-12 | $57.04 | 07-03-12 Included in PARTS check 12735 |
| 10 | Patient D | 06-14-12 | $570.41 06-12-12 | $57.04 | 07-03-12 Included in PARTS check 12735 |

The relevant portions of Jury Instructions read as follows:

**COUNT ONE — CONSPIRACY TO PAY ILLEGAL KICKBACKS18 U.S.C. § 371**

Title 18 United States Code § 371 makes it a crime for anyone to conspire with someone

else to commit an offense against the laws of the United States. Count One charges Defendants

William Joseph Dubin and David Fox Dubin with conspiring to pay illegal kickbacks to Glen

Elwood McKenzie, Jr. for patient referrals in violation of the federal anti-kickback law, Title 42, United States Code, Section 1320a-7b(2).

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose.   It is a kind of "partnership in crime" in which each member becomes the agent of every other member.

For you to find the Defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: That the Defendant and at least one other person made an agreement to commit the crime of knowingly and willfully offering to pay or paying any remuneration (including a kickback) to a person to induce such person to refer patients for the furnishing or arranging of any item or service for which payment may be made in whole or in part under a federal health care program, as charged in the indictment;

*Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; *and*

*Third:* That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment in order to accomplish some object or purpose of the conspiracy.

## COUNTS SEVEN THROUGH ELEVEN – OFFERING TO PAY AND PAYING ILLEGAL REMUNERATION (KICKBACKS) 42 U.S.C. § 1320a-7b(b)(2)

Title 42 United States Code Section 1320a-7b(b)(2) makes it a crime to pay any remuneration designed to encourage an individual to refer another party to a Medicaid provider for services to be paid for by the Medicaid program. Counts Seven through Eleven charge the Defendants with offering to pay and paying remuneration to Glen Elwood McKenzie, Jr. to induce

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 6

him to refer patients in violation of this law. For you to find Defendants guilty of those crimes, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First:* That the Defendant offered to pay or did pay any remuneration (including any kickback or bribe), directly or indirectly, overtly or covertly, in cash or in kind to Glen Elwood McKenzie, Jr.;

*Second:* That the remuneration was offered or paid to induce Glen Elwood McKenzie, Jr. to refer an individual to William Joseph Dubin and David Fox Dubin or their company known as Psychological Arts for the furnishing or arranging for the furnishing of any psychological service;

*Third:* That the psychological service was one for which payment was or might be made, in whole or in part, under a federal health care program; and

*Fourth:* That the Defendant acted knowingly and willfully when offering to pay or paying the remuneration.

The word "knowingly," as that term has been used in the instructions for these counts, means that the act was done voluntarily and intentionally, not because of mistake or accident.

The government is not required to prove the defendant had actual knowledge of the Anti-Kickback Statute or the specific intent to violate it. The government must prove that the defendant willfully committed an act that violated the Anti-Kickback Statute.

In deciding the third element above, you are instructed that the Texas Medicaid Program is a federal health care program.

The Government must prove beyond a reasonable doubt that one purpose for the offering or paying of a remuneration was to induce the referral of an individual to a person for any item or

service for which payment may be made in whole or part under a federal health care program. The Government need not prove all of the purposes, or even the primary purpose of the remuneration, but only that one purpose of the offering and paying of the remuneration was to induce a referral. It is not a defense that there were other reasons for the offering or payment of a remuneration if you find beyond a reasonable doubt that one purpose for the offering or payment was to induce the referral.

GROUNDS FOR ACQUITTAL AND ARGUMENT

I.   **The evidence presented at trial was insufficient to sustain a verdict of guilty with regard to Count 1.**

When a defendant timely files a Motion for Judgment of Acquittal under Fed.R.Crim.P. 29(c)(1), a district court will uphold the verdict only if, a rational jury could have found each of the essential elements proven beyond a reasonable doubt.   *United States v. Gonzales,* 436 F.3d 560, 571 (5th Cir. 2006).   The evidence presented at trial would not allow a rational trier of fact to find all the elements of the offense of conspiracy to pay illegal kickbacks beyond a reasonable doubt as indicted in Count 1. First, the evidence is legally insufficient to prove William Dubin agreed to pay (or agreed to offer to pay) Glen McKenzie for the "referral of a patient" as the term "referral" is defined under 42 U.S.C. § 1320a-7b(b)(2)(A). Second, the evidence is legally insufficient to prove William Dubin agreed to pay (or agreed to offer to pay) Glen McKenzie with the requisite "intent to induce" under 42 U.S.C. § 1320a-7b(b)(2).

A.   **The evidence is legally insufficient to prove William Dubin agreed to pay (or agreed to offer to pay) Glen McKenzie to "refer a patient."**

The indictment in this case charges William Dubin with conspiracy to pay or offer to pay illegal kickbacks to induce the referral of an individual, specifically the referral of children as

patients, under 42 U.S.C. § 1320a-7b(b)(2)(A)[1]. Under health care law, the term "referral" is specific: the request for, or ordering of, or the certifying or recertifying of the need for, any designated health service for a particular patient. *See* 42 CFR Ch. IV § 411.351, 72 FR 51012, 42 U.S.C.S. § 1395nn. This definition has been adopted by the Fifth Circuit specifically in the context of the Anti-Kickback Statute, acknowledging that the purpose of the statute is to "prevent fraud and abuse" by the "*gatekeeper* to the federally reimbursed care." *United States v. Dailey*, 868 F.3d 322, 331 (5th Cir. 2017) (emphasis added).

The *Dailey* opinion relies on the groundbreaking opinion by the Seventh Circuit in *United States v. Patel*, which was the first to expand the definition of "referral" to include circumstances when a physician authorizes a certain type of care; previously, the term "referral" had only applied when a patient was directed to the services of a particular provider. *United States v. Patel*, 778 F.3d 607 (7th Cir. 2015). In *Patel*, the Seventh Circuit also based its decision on the purpose of the statute:

> According to the Health Resources and Services Administration, the Statute was enacted to "protect the Medicare and Medicaid programs from increased costs and abusive practices resulting from provider decisions that are based on self-interest rather than cost, quality of care or necessity of services" … [and] to protect patients from doctors whose medical judgments might be clouded by improper financial considerations. Health Res. & Serv. Admin., Program Assistance Letter 1995-10." *Id.* at 612.

The decision to expand the definition outside of the ordinary dictionary definition[2] was based on a

---

1 It should be noted that 42 U.S.C. § 1320a-7b(b)(2)(B) establishes criminal liability for the payment or the offer of payment to induce the recommendation of a service. However, the indictment in this case very clearly and repeatedly charges William Dubin under subsection (A) for paying for the referral of individuals – even specifying that the "individuals" alleged are the children being referred for psychological services. Therefore, any evidence suggesting a payment to induce the recommendation of a service is irrelevant. Additionally, even if the indictment had been properly charged under subsection (B), there still would be insufficient evidence of the requisite intent to induce as discussed below, which is uniformly defined under both subsection (A) and subsection (B).

2 "'When interpreting the meaning of undefined statutory terms, the "cardinal rule is that words used in statutes must be given their ordinary and plain meaning.' *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000). To determine the

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 9

careful consideration of the risk that a doctor being paid to authorize a certain service would be incentivized to prescribe that service even where it is unnecessary. *Id.* at 615. It did not, nor does the *Dailey* opinion from the Fifth Circuit, lend itself to any further expansion or application.

There was absolutely no evidence presented in this case that supports a conviction pursuant to the appropriate definition of "referral of an individual." There is no evidence that Glen McKenzie had the power to designate that a particular child will get a particular service, rather the evidence shows that he had no knowledge of which child came from which entity until he was told by the staff at PARTS. The abundant evidence of emails from Glen McKenzie to the staff requesting information about the referred children, along with the term "referral source" consistently meaning the shelter rather than Glen McKenzie, shows that William Dubin certainly had no expectation that Glen McKenzie had the power or authority to refer any individual.

The limited testimony presented on this issue came from Clifford Mankin from Lifeworks and Carline Geiger from DARS, both of whom stated that Glen McKenzie would not be aware of the identities of their residents, let alone participate in the determination of the needed mental health services. Clifford Mankin explained that the children at Lifeworks would be referred by him to one of the multiple contracting psychologists at the request of their individual case managers. Similarly, Carline Geiger testified that the children would work with their assigned social workers to choose which of the available psychologists they wanted to perform their evaluation. There is no evidence to suggest this was any different at William's House, especially considering the contract

---

plain meaning of words, we frequently look to dictionary definitions. *Id.* We also consider the construction of similar terms in other statutes, *id.*, as well as the purpose of the statute being interpreted. *Id.* at 1002… Indeed, [Merriam-Webster Dictionary] defines 'referral' as 'the process of directing or redirecting (as a medical case or a patient) to an appropriate specialist or agency for definitive treatment.' … [Oxford English Dictionary] defines it as 'the directing of a patient, usually by a general practitioner, to a consultant or institution for specialist treatment.'" *United States v. Patel*, 778 F.3d 607, 613 (7th Cir. 2015).

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 10

between PARTS and Williams House which was non-exclusive, indicating the shelter could have many psychologists doing evaluations, just as the other entities did. The contract does not guarantee any number of children will be sent to PARTS, and explains that treatment plans are determined by a number of individuals including the child, managing conservator, psychiatrist, therapist, and Administrator (but markedly not including the President of the Board of Directors.)

Without any evidence showing that William Dubin believed Glen McKenzie had the authority to decide which children got evaluated, or by whom a specific child got evaluated, there is legally insufficient evidence to prove William Dubin conspired to violate the anti-kickback statute.

### B. The evidence is legally insufficient to prove William Dubin agreed to pay (or agreed to offer to pay) Glen McKenzie with the requisite "intent to induce."

A conviction for conspiracy to pay illegal kickbacks must be supported by evidence proving that the Defendant made an agreement to violate the anti-kickback statute by paying or offering to pay a remuneration with the intent to induce a referral. To have the requisite "intent to induce" under 42 U.S.C. § 1320a-7b(b)(2), the Defendant must intend to gain undue influence over the reason or judgment of a person with certain illegal ends in mind. *See United States v. Miles*, 360 F.3d 472 (5th Cir. 2004); *see also United States v. Shoemaker*, 746 F.3d 614 (5th Cir. 2014). In *Miles* and *Shoemaker* the Fifth Circuit articulated this definition of "intent to induce" to determine when a payment made to a third party is sufficiently attenuated from the individual being referred to avoid liability under the statute.

In *Miles*, the Court concluded that the requisite intent will always be present if the payment is made or offered to (1) the "relevant decisionmaker" or (2) an individual acting on behalf of the

relevant decisionmaker. [3] 360 F.3d 472. If the payment is made to a third party simply for providing an option to an independent decisionmaker, there is insufficient evidence that the payor intended to induce a referral. *See Id.* In *Shoemaker,* the Court clarified the application of *Miles*, concluding that the key analysis is whether the payment is made with the intent for the person receiving the remuneration to leverage his power and control over the relevant decisionmaker so as to unduly influence the ultimate decision. 746 F.3d 614. In *Shoemaker*, the court specifically noted and supported the premise that *Miles* "characterized remuneration recipients who were paid with the culpable intent to induce referrals," correctly representing "the statute's requirement that remuneration must be paid with certain illegal ends in mind."[4] *Id*. at 629.

Throughout the opinions in *Miles* and *Shoemaker*, the Fifth Circuit identified factors to be considered when determining if a payment was made with intent to induce undue influence. A payment is likely made with the requisite intent if the payor: (1) knows the payee has a history of making the ultimate decision regarding the referrals in question, (2) expects the payee to exploit his personal access to ensure unwarranted favoritism, (3) believes the payee has managerial

---

3 As discussed above, there was absolutely no evidence presented that Glen McKenzie had any knowledge of or influence over which children were at any given shelter or needed any particular evaluation, and so neither of these first two scenarios apply. Therefore, the only possible basis for a conviction would be sufficient proof that William Dubin intended for Glen McKenzie to exert undue influence over the individual who determined which children got evaluated by which psychologist, or, arguably, over the entity's decision to contract with PARTS.

4 This interpretation is also consistent with both the intent of the statute to prevent fraud and abuse, and the guidance from the Department of Health and Human Services (HHS) on how to determine the illegality of a remuneration under that statute. Fraud and abuse are both defined in Medicaid regulations. Fraud means "an intentional deception or misrepresentation made by a person with the knowledge that the deception could result in some unauthorized benefit to himself or some other person." 42 C.F.R. § 455.2. Abuse means "provider practices that are inconsistent with sound fiscal, business, or medical practices, and result in an unnecessary cost to the Medicaid program, or in reimbursement for services that are not medically necessary or that fail to meet professionally recognized standards for health care." 42 C.F.R. § 455.2. The HHS determines "intent to induce" by examining the "subjective intentions under the particular facts and circumstances" and whether "the Proposed Arrangement would pose more than a minimal risk of fraud and abuse under the anti-kickback statute." 56 FR 35952; 64 FR 63518, 63521; *See, e.g.,* 2018 HHS OIG Adv. Op. LEXIS 16, *11. The less influence the person receiving the payment has over the patients, treatment, and decision making, the lower the risk of fraud and abuse, and the lower the likelihood that the payment was made with the requisite intent to induce.

control over the individual with operational authority over the decision such that the payee can direct the decision making process, (4) intends the payee to make subsequent bribes to sway the decision, or (5) anticipates the payee can, and will, exert authority over the decision makers employment, salary, or reputation in response to their choices. Alternatively, if the payment is made simply in return for providing information and promotional materials to potential referral sources, there is not sufficient proof of intent to induce to sustain a conviction.

Here, there was insufficient evidence presented at trial to prove that William Dubin ever paid or offered to pay Glen McKenzie with the intent that he unduly influence anybody to refer any children to Psychological Arts. In the light most favorable to the Government, the evidence simply suggests that William Dubin intended Glen McKenzie to use his networking connections in the industry, and potentially his position on the Board of Directions of Williams House, to get PARTS an initial meeting or consideration. For DARS, the evidence clearly showed that Glen McKenzie simply set up the presentation meeting and provided information about Psychological Arts. For Lifeworks, the testimony of Clifford Mankin established that Glen McKenzie was introduced to him through his boss, but that he felt no pressure to alter his independent judgment of PARTS. Additionally, there was no evidence presented that William Dubin had any knowledge of Glen McKenzie's friendship with Clifford Mankin's boss, or that he intended Glen McKenzie to leverage any connection improperly or illegally. For Austin Children's Shelter, the evidence unmistakably showed that Glen McKenzie was not responsible for that contract, rather Katherine King made that initial connection, so any payment made in connection to that shelter was unrelated to the inducement of a referral. Importantly, Glen McKenzie was paid in the exact same manner and amount for all of the shelters and entities, plainly demonstrating that there was no expectation

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 13

that he perform his responsibilities any differently at the shelters where he happened to have a personal connection.

Regarding William's House, the evidence did show that Glen McKenzie was President of the Board of Directors. However, there is absolutely no exhibit or testimony in the record showing any tendency of Glen McKenzie to exploit his position, or William Dubin's expectation for him to do so. In fact, Glen McKenzie's original email indicating that he could "get [William Dubin] in" specified that he would have to speak to the several different people who would be making the decision. Additionally, the emails between Glen McKenzie and Sandi Lockett show his deference to her preferences and the importance of her getting the "best assessments in the best time frame," reflecting the intention of both Glen McKenzie and William Dubin to have the contract secured on the merits of PARTS. This is supported by the checklist and process William Dubin went through before he officially became a contracting psychologist with William's House.

Finally, the timeline of events proves that the contract with William's House was secured prior to any payment, offer of payment, or agreement to pay or offer to pay Glen McKenzie. The email where Glen McKenzie suggests his ability to connect Psychological Arts and Williams House was sent on January 24, 2011. The contract between Williams House and Psychological Arts is finalized on February 15, 2011 following meetings between William Dubin and Sandi Lockett and investigation into William Dubin by Sandi Lockett. Richard Yuen has discussions with staff at Williams House about the services needed in mid-February. It is not until March 3, 2011, that William Dubin even informs Glen McKenzie that the arrangement is "com[ing] through" (importantly, Glen McKenzie had to be told this by William Dubin, demonstrating that Glen McKenzie had no role in process) and references any payment. There is no practicable way

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 14

that an offer or agreement made on or about March 3, 2011, could have been made with the intent to induce a prior occurrence. A payment potentially made in return for facilitating the contract is simply not sufficient for a conviction of the indicted charge.[5]

Without sufficient evidence of William Dubin's intent to induce, there is legally insufficient evidence to prove he conspired to violate the anti-kickback statute as alleged in Count 1.

## II.    The evidence presented at trial was insufficient to sustain a verdict of guilty with regard to Counts 9 and 10.

The evidence presented at trial would not allow a rational trier of fact to find all the elements of the offense of paying or offering to pay illegal kickbacks beyond a reasonable doubt as indicted in Counts 9 and 10.   First, the evidence is legally insufficient to prove William Dubin agreed to pay (or agreed to offer to pay) Glen McKenzie for the "referral of a patient" as the term "referral" is defined under 42 U.S.C. § 1320a-7b(b)(2)(A).[6]   Second, the evidence is legally insufficient to prove William Dubin agreed to pay (or agreed to offer to pay) Glen McKenzie with the requisite "intent to induce" under 42 U.S.C. § 1320a-7b(b)(2).

### A. The evidence presented at trial was legally insufficient to prove that Defendant paid or offered to pay Glen McKenzie to induce referral of an individual.

As discussed above, there is no evidence in the record to prove that William Dubin ever paid or offered to pay Glen McKenzie with the intent to induce the referral of any patient.

---

5 Any argument or evidence of an offer or agreement made prior to March of 2011 falls outside of the scope of the indictment which alleges a conspiracy beginning on March 1, 2011. There is no ongoing agreement that would be sufficient for a conviction of conspiracy in this case because, as discussed above, Glen McKenzie was only involved in the contracting between PARTS and the entity, not in the decision made by the staff at the various entities to send any individual child or patient to PARTS.
6 Defendant incorporates in his argument relating to Counts 9 & 10, the discussion of the definition of "referral" set forth above in his argument relating to Count 1 of the indictment.

Specifically as to Counts 9 and 10, there was no evidence presented that Glen McKenzie had the authority to decide if and how Patients C and D were evaluated, that he used undue influence or leveraged any power in order to induce the referral, or that William Dubin intended him to do so. In fact, there was no evidence presented that Glen McKenzie even knew these children were evaluated by parts until he received the spreadsheet of children from the PARTS staff. While the evidence does support a finding that Glen McKenzie was paid on July 3, 2012 by a Psychological Arts check #12735, and that the payment was related to the services provided to Patients C and D, once again those facts do not feasibly result in the conclusion that the payment was made to induce the referral of those patients. Patient C was examined on June 14, 2012, and Patent D was examined on June 7, 2012, proving they were both referred to PARTS at least several weeks prior to the payment. On their face, Counts 9 and 10 each allege a payment made *in return* for the referral of a patient, which is not in and of itself a violation of 42 U.S.C. § 1320a-7b(b)(2) which requires the payment be made *to induce* a referral.

Admittedly, the unit of prosecution under the anti-kickback statute can be a payment or an offer of payment, and the Government need not prove a referral actually resulted. However, the Government also failed to present evidence sufficient to support a conviction under any alternative reading of Counts 9 and 10. There is no "offer to pay" alleged in the indictment or presented as evidence related specifically to Patients C and D. There is no evidence that the payment of check #12735 was made with the intent to induce any subsequent or continued referral because (1) as previously addressed, Glen McKenzie did not have the authority to refer individual children in the first place, and (2) there is no evidence suggesting that any subsequent evaluations would not have occurred but for the payment of that specific check or that William Dubin suspected as much.

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 16

Finally, if the "offer to pay" is to be construed as contract between Psychological Arts and Glen McKenzie signed on April 19, 2011, there is no evidence showing that "offer" was made to induce the referral of Patients C and D (or any other residents of William's House) since the contract between PARTS and William's House had already been finalized.

**B. The evidence is legally insufficient to prove that Defendant paid or offered to pay Glen McKenzie with the requisite intent to "induce a referral."**

As with is the case with a charge of conspiracy to pay or offer to pay illegal kickbacks, the substantive offense, under 42 U.S.C. § 1320a-7b(b)(2), of paying or offering to pay a kickback contains the element that the payment or offer to pay must have been with intent to induce a referral.   To have the requisite "intent to induce" under 42 U.S.C. § 1320a-7b(b)(2), the Defendant must intend to gain undue influence over the reason or judgment of a person with certain illegal ends in mind. *See United States v. Miles*, 360 F.3d 472 (5th Cir. 2004); *see also United States v. Shoemaker*, 746 F.3d 614 (5th Cir. 2014).

To reiterate the argument made above with respect to Count 1, in *Miles*, the Court concluded that the requisite intent will always be present if the payment is made or offered to (1) the "relevant decision maker" or (2) an individual acting on behalf of the relevant decision maker. 360 F.3d 472. If the payment is made to a third party simply for providing an option to an independent decision maker, there is insufficient evidence that the payor intended to induce a referral. *See Id.* In *Shoemaker,* the Court clarified the application of *Miles*, concluding that the key analysis is whether the payment is made with the intent for the person receiving the remuneration to leverage his power and control over the relevant decision maker so as to unduly influence the ultimate decision. 746 F.3d 614. In *Shoemaker*, the court specifically noted and supported the premise that *Miles* "characterized remuneration recipients who were paid with the culpable intent to induce

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 17

referrals," correctly representing "the statute's requirement that remuneration must be paid with certain illegal ends in mind." *Id.* at 629.

In this case, the evidence is legally insufficient to prove that Defendant acted with the requisite intent, as determined by *Miles* and *Shoemaker,* to induce referrals; that is to exercise undue influence on the individual making the decision to refer individuals to Psychological Arts.   There was no evidence introduced at trial establishing the nature of the conversations between Glen McKenzie and the decision maker at Williams House who actually referred the patients to Psychological Arts.   There was no evidence introduced to show the relationship between Glen McKenzie and the decision maker at Williams House, (i.e. whether the decision maker was under the supervision of Glen McKenzie, discussed decisions with him relating to Williams House, had frequent interaction with him, etc.)   There was no evidence that Glen McKenzie did anything other than inform the decision maker at Williams House of the availability of Psychological Arts to perform psychological evaluations and to try to ensure that the evaluations were done correctly.

### III.    A judgment of acquittal should be granted on Counts 9 and 10 because they are multiplicitous as to each other.

The rule against multiplicity holds that the Government cannot charge a single offense in more than one count of an indictment. *United States v. Heath*, 970 F.2d 1397, 1401 (5th Cir. 1992). "The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense," running afoul of the Fifth Amendment's proscription against double jeopardy. *United States v. Swaim*, 757 F.2d 1530, 1537 (5th Cir.1985). As in the double jeopardy context, "[t]he test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not," *United States v. Buchanan*, 485 F.3d 274,

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 18

278 (5th Cir. 2007) (internal citations omitted), i.e., the double jeopardy test announced in *Blockburger v. United States*, 284 U.S. 299 (1932).

There can be no doubt that Counts 9 and 10 combine to fail the Blockburger test and are therefore multiplicitous. If the counts are interpreted to sufficiently charge a violation of 42 U.S.C. § 1320a-7b(b)(2), they are either alleging that (1) each payment was made with the intent to induce a subsequent referral (rather than in return for the referral of each patient indicated within the count) or (2) each payment constitutes evidence of a prior offer made for the referral of that patient. Under the first theory, the counts are multiplicitous because they allege the same exact payment – PARTS check #12735 issued on July 3, 2012. Under the second theory, the counts are multiplicitous because they allege the exact same offer of payment – the offer made by William Dubin on March 3, 2011, to pay Glen McKenzie 10% of the gross profits resulting from his work.

<u>REQUEST FOR RELIEF</u>

Wherefore, for the reasons stated above, Defendant contends that the evidence presented at trial was insufficient to sustain a verdict of guilty with regard to Count 1, 9, and 10, and he hereby requests that the Court grant a judgment of acquittal as to these counts.

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 19

Respectfully submitted,

/s/ E.G. Morris
**E. G. Morris**
SB# 14477700
Law Office of E. G. Morris
2202 Lake Austin Blvd.
Austin, Texas 78703
OFC (512) 478-0758
FAX (877) 497-8347


## CERTIFICATE OF SERVICE


I hereby certify that on the 12th day of November, 2018, the foregoing was filed electronically through the Court's CM/ECF Document Filing System which will send notification of such filing to all counsel of record for the parties in this case.

/s/E.G. Morris
E. G. Morris

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL - Page 20

**UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF
TEXAS AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **vs.** | § | **CRIMINAL NO:** |
| | § | **AU:17-CR-00227(1)-XR** |
| **(3) WILLIAM JOSEPH DUBIN** | § | |
| **(4) DAVID FOX DUBIN** | § | |

ORDER

Came this day for consideration, Defendant William Joseph Dubin's Motion for Judgment of Acquittal timely filed under Fed.R.Cr.Pro. Rule 29.  Having considered the motion, the government's reply and the authorities, the court is of the opinion that the motion is meritorious.

IT IS ORDERED, that judgments of acquittal are entered at to Counts 1, 9 and 10 of the indictment.

Signed this _____ day of _____, 201__.


_____
Xavier Rodriguez
United States District Judge